UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————

JORGE HUMBERTO ALVAREZ ORTIZ,

             Petitioner,

    v.

JOSEPH FREDEN et al.,

             Respondents.

———————————————

                25-CV-960-LJV
                DECISION & ORDER

       "To implement its immigration policy, the [g]overnment must be able to decide (1) who may enter the country and (2) who may stay here after entering." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). For years, those have been two separate questions. In fact, "[t]he distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

       Until very recently, the United States Department of Homeland Security ("DHS") recognized this dichotomy and operated under two separate statutory schemes governing the detention of noncitizens: 8 U.S.C. § 1225, covering noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and 8 U.S.C. § 1226, covering noncitizens who successfully have entered the United States—whether legally or illegally. Courts, including the United States Supreme Court, have echoed that understanding. *See, e.g. Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] *seeking admission into* the country under §§ 1225(b)(1) and (b)(2). It also authorizes the

[g]overnment to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." (emphasis added)).  But like much immigration law of late, that long-recognized distinction is no more—at least as far as the executive branch is concerned.

Notwithstanding Supreme Court caselaw and decades of practice, DHS now takes the position that anyone who is in the country without having been legally "admitted"—regardless of how long they have been here—falls under 8 U.S.C. § 1225(b), which mandates detention.  *See Romero v. Hyde*, —— F. Supp. 3d ——, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025) ("[R]espondents' new interpretation is contrary to the agency's own implementing regulations, its published guidance, the decisions of its immigration judges (until very recently), decades of practice, the Supreme Court's gloss on the statutory scheme, and the overall logic of our immigration system." (internal citations omitted)).  In other words, DHS now says that those who have entered the United States and those who have never entered are one and the same.  And this about-face has been approved by the Board of Immigration Appeals ("BIA").  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025).

Following *Hurtado*, numerous district courts—including Judge Meredith A. Vacca of this District[1]—have disagreed with the BIA's reasoning and granted habeas petitions or motions for preliminary relief for noncitizens whom DHS has detained ostensibly

---

[1] Judge Vacca has issued several text orders with written decisions to follow finding that petitioners like Alvarez Ortiz who already are in the country fall under section 1226(a) and are entitled to a bond hearing.  *See Rezende v. Bondi*, Case No. 6:25-cv-6538, Docket Item 19 (W.D.N.Y. Oct. 29, 2025); *Barbosa Da Cunha v. Moniz*, Case No. 6:25-cv-6532, Docket Item 25 (W.D.N.Y. Oct. 20, 2025); *Andrade Lozano v. Hyde*, Case No. 6:25-cv-6528, Docket Item 20 (W.D.N.Y. Oct. 17, 2025).

under section 1225(b)(2).  *See, e.g.*, *Hyppolite v. Noem*, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025); *Guerrero Orellana v. Moniz*, —— F. Supp. 3d ——, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Lepe v. Andrews*, —— F. Supp. 3d ——, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Barrera v. Tindall*, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Hasan v. Crawford*, —— F. Supp. 3d ——, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, —— F. Supp. 3d ——, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Mosqueda v. Noem*, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025).  By contrast, it appears that to date only two district courts have followed *Hurtado*'s reasoning to find that noncitizens already in the county are covered by section 1225(b)(2).  *See Vargas Lopez v. Trump*, —— F. Supp. 3d ——, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, —— F. Supp. 3d ——, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025).

That being said, this Court is obliged to carefully and independently analyze the statutes at issue.  The Court now has done just that.  And for the reasons that follow, the Court joins the majority of courts in finding that section 1225(b)(2) does not apply to individuals, like the petitioner here—Jorge Humberto Alvarez Ortiz—who are physically in the country but have not been legally admitted and seek to stay.

## BACKGROUND[2]

Alvarez Ortiz is a citizen of Guatemala.  Docket Item 1 at ¶ 1; Docket Item 12-3 at 2.  He "entered the United States without inspection" more than twenty years ago, "[i]n

---

[2] The Court takes the facts from the petition, Docket Item 1; Alvarez Ortiz's second motion for a temporary restraining order, Docket Item 8; and the government's motion to dismiss, Docket Item 12-3.  The Court acknowledges that due to the expedited briefing schedule, the government has not yet been able to obtain the alien

or about April 2003." Docket Item 8 at ¶ 1. Alvarez Ortiz alleges that he is a victim of spousal abuse, and on August 12, 2025, United States Citizenship and Immigration Services determined that he had made a prima facie showing of eligibility for relief under the Violence Against Women Act. Docket Item 1 at ¶ 1; Docket Item 12-3 at 2; *see* Docket Item 1-2. That determination is not a final decision but is valid for 180 days. Docket Item 12-3 at 2; *see* Docket Item 1-2.

Nevertheless, on or before October 1, 2025—that is, long before the 180-day period expired—Immigrations and Custom Enforcement ("ICE") took Alvarez Ortiz into custody and detained him at the Buffalo Federal Detention Center in Batavia, New York. *See* Docket Item 1 at ¶ 7; Docket Item 12-3 at 2. A short time later, Alvarez Ortiz filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he was being held unlawfully. Docket Item 1. He also filed a motion for a temporary restraining order ("TRO") enjoining his transfer out of this District and his removal from the United States during the course of these proceedings. Docket Item 2. This Court granted the TRO "[t]o maintain the status quo, and solely so that the Court c[ould] make an informed decision about its authority to issue relief and whether any relief that it ha[d] the power to issue should be granted." Docket Item 3.[3]

---

file for Alvarez Ortiz. *See id.* at 2 n.2. The government proceeded using the facts alleged in the petition for its motion to dismiss only and did not admit them. *See id.*

[3] Approximately three weeks after this Court's text order granting the first motion for a TRO, the government responded, arguing that this Court does not have the power to enjoin transfer and removal. Docket Item 11. This Court construes that response as a motion for reconsideration and, after careful consideration, denies it. More specifically, this Court finds that 8 U.S.C. § 1252(g) does not bar this Court's temporarily enjoining removal where the petitioner has alleged that removal would violate statutory and constitutional law. *See, e.g.*, *Calderon v. Sessions*, 330 F. Supp. 3d 944, 956 (S.D.N.Y. 2018) (finding that petitioner's "seek[ing] consideration of his legitimate and authorized pursuit of an existing process *before* the government exercises its right to

Alvarez Ortiz then filed a second motion for a TRO, this time seeking his release pending the outcome of his petition. Docket Item 8. The government responded to the arguments in the second motion for a TRO and moved to dismiss the petition. Docket Item 12. After Alvarez Ortiz replied, Docket Item 13, this Court heard oral argument and reserved decision, *see* Docket Item 14.

## LEGAL PRINCIPLES

### I.    TEMPORARY RESTRAINING ORDER

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (quoting *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "A plaintiff seeking a [TRO or] preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party to the suit, [the court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

---

remove [him] . . . is not a claim of a right to remain in the United States"). And although the respondents correctly note that this Court previously has declined to enjoin transfer, *see, e.g.*, *Singh v. Whitaker*, 362 F. Supp. 3d 93, 106 (W.D.N.Y. 2019), more recent caselaw has caused this Court to reconsider that position. In particular, this Court finds that the "[p]etitioner's interests in participating in further proceedings before this Court and in maintaining adequate access to legal counsel through these proceedings" warrant an order enjoining transfer. *See Perez y Perez v. Noem*, 2025 WL 1908284, at *2 (S.D.N.Y. June 13, 2025) (citing *Ozturk v. Hyde*, 136 F.4th 382, 402 (2d Cir. 2025)).

"The district court has wide discretion in determining whether to grant a [TRO or] preliminary injunction." *Valenzuela Arias*, 612 F. Supp. 3d at 311 (quoting *Almontaser v. N.Y.C. Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (per curiam)). That being said, "[a] preliminary injunction is an extraordinary remedy," *Winter*, 555 U.S. at 24, and "should not be routinely granted," *Hanson Tr. PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Med. Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir. 1977)). And "[w]hen deciding whether to issue a preliminary injunction, courts 'should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *We The Patriots USA, Inc.*, 17 F.4th at 279 (quoting *Winter*, 555 U.S. at 24).

## II.    SECTION 2241 PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts, and dispose of the matter as law and justice require.'" *Id.* (alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

III.    **MOTION TO DISMISS**

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

I.    **STATUTORY FRAMEWORK**

The two statutes at issue are 8 U.S.C. §§ 1225 and 1226—both sections of the Immigration and Nationality Act ("INA").

A.    **Section 1225**

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."[4]  8 U.S.C. § 1225.  Under this section, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)).  "Section 1225(b)(1) applies to [noncitizens] initially

---

[4] The INA defines the term "alien" as meaning "any person not a citizen or national of the United States."  8 U.S.C. § 1101(a)(3).  This Court uses "alien" and "noncitizen" interchangeably throughout this decision and order.

determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," as well as "to certain other [noncitizens] designated by the Attorney General in h[er] discretion." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)).

Noncitizens "covered by [section] 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But if a noncitizen covered by section 1225(b)(1) "'indicates either an intention to apply for asylum . . . or a fear of persecution,' then that [person] is referred for an asylum interview." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). In that case, the noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). And "[i]f an immigration officer determines after that interview that the [noncitizen] has a credible fear of persecution, 'the [noncitizen] shall be detained for further consideration of the application for asylum'" under section 240 of the INA. *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Section 1225(b)(2) covers "[i]nspection of other aliens" and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A). In other words, whereas for section 1225(b)(1) to apply, the immigration officer must definitively determine that the noncitizen "is inadmissible," for section 1225(b)(2) to apply, the immigration official need only determine that the noncitizen "is not clearly and beyond a doubt entitled to be admitted." *See id.* §§ 1225(b)(1)(A)(i), (b)(2)(A). The Supreme Court has described section 1225(b)(2) "as

a catchall provision that applies to all applicants for admission not covered by [section] 1225(b)(1)."  *See Jennings*, 583 U.S. at 287.

The only exception to the mandatory detention required by section 1225(b) is that "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'"  *Id.* at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).  "Such parole, however, 'shall not be regarded as an admission of the alien.'"  *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)).

### B.    Section 1226

Section 1226 is titled "Apprehension and detention of aliens."  8 U.S.C. § 1226. It states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  *Id.* § 1226(a).  It further provides that:

> [e]xcept as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

*Id.*

Section 1226(c) deals with the "[d]etention of criminal aliens" and provides that "[t]he Attorney General shall take into custody any alien who" has committed certain

crimes.  *See id.* § 1226(c).  In 2025, Congress passed the Laken Riley Act, which added

the following category of individuals to section 1226(c)'s mandatory detention:

> [A]ny alien who—
>
> . . .
>
> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

*Id.* § 1226(c)(1)(E); *see* Laken Riley Act, Pub. L. No. 199-1, § 2(1)(C), 139 Stat. 3, 3

(2025).

## II.    EXHAUSTION

The respondents first argue that this Court should dismiss the petition because

Alvarez Ortiz failed to exhaust his administrative remedies.  *See* Docket Item 12-3 at 5-

6.  But based on Alvarez Ortiz's reply, it appears that he has indeed exhausted them.

*See* Docket Item 13-1 (immigration judge's order denying bond because under *Hurtado*,

Alvarez Ortiz is being held under section 1225(b)(2)(A)).  Moreover, even if he had not,

this Court would find that exhaustion was futile because immigration judges are bound

to follow *Hurtado* absent an order from this Court.  *See Guerrero Orellana*, 2025 WL

2809996, at *4 n.2 (explaining that "[t]he BIA made its position on the scope of [section]

1225(b)(2)(A) crystal clear in *Matter of Hurtado* such that further agency proceedings

would be futile" (citation and internal quotation marks omitted)).  Thus, the Court

declines the respondents' invitation to dismiss the petition for failure to exhaust.

III.    **AUTHORITY FOR ALVAREZ ORTIZ'S DETENTION**

The respondents move to dismiss Alvarez Ortiz's petition because, they say, he is properly detained under section 1225(b)(2). *See* Docket Item 12-3 at 6-12. Alvarez Ortiz counters that he is detained under section 1226(a) and is therefore entitled to a bond hearing. *See* Docket Item 13 at 3-4. He further argues that he is entitled to a TRO because he is likely to succeed on the merits of his claim and "is suffering irreparable harm due to his present detention in violation of his statutory and due process rights." *See* Docket Item 8 at 1-2.

As always when statutes are at issue, the starting point is the statutory text. *See United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016). In analyzing statutory language, the Court first must "determine whether [the] language is clear or ambiguous." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005). If "there is no statutory definition of a term, [the Court] consider[s] 'the ordinary, common-sense meaning of the words.'" *Rowland*, 826 F.3d at 108 (quoting *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000)).

The Court determines whether statutory language is ambiguous "by referenc[ing] the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Daniel*, 428 F.3d at 423 (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)). If the Court concludes that the "meaning is plain," that ends the inquiry. *Id.* But if the Court finds the statutory language to be ambiguous, it then "resort[s] first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history." *Id.* (internal citation omitted).

With that backdrop, the Court turns to the text of 8 U.S.C. § 1225(b)(2)—the section under which the respondents claim that Alvarez Ortiz is being held. *See* Docket

11

Item 12-3 at 12. Section 1225(b) is titled "Inspection of applicants for admission." 8 U.S.C. § 1225(b). Subsection (b)(1) is titled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," and subsection (b)(2) is titled "Inspection of other aliens." *Id.* As noted above, section 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A) (emphasis added). So the Court must begin by determining what the terms "applicant for admission" and "alien seeking admission" mean.

As explained above, section 1225 defines an "applicant for admission": Under section 1225(a)(1),

> [a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. § 1225(a)(1). And elsewhere, the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). So based on the plain text, any noncitizen who has not been legally allowed to enter is treated under section 1225 as an "applicant for admission."

A harder question is what the term "seeking admission" means. More specifically, is a noncitizen who already has entered the United States but was not legally admitted and seeks to stay here "seeking admission"? The Court again turns first to the plain meaning of the statutory language.

"'Seeking' means 'asking for' or 'trying to acquire or gain.'" *Lepe*, 2025 WL 2716910, at *5 (quoting *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking). Moreover, "the use of a present participle, 'seeking,' 'necessarily implies some sort of present-tense action.'" *Id.* (quoting *Martinez v. Hyde*, —— F. Supp. 3d ——, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). As noted above, "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). So "seeking admission" means actively trying to acquire "lawful entry . . . after inspection and authorization by an immigration officer."

"Entry," however, is not defined in the INA. *See generally id.* § 1101. The dictionary defines "entry" as "the right or privilege of entering" or "the act of entering."[5] *See Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry. So arguably, "lawful entry" could mean either the legal right to enter, as the respondents claim, or the act of entering the country legally, as Alvarez Ortiz urges. In other words, the plain text is ambiguous.

Because of that ambiguity, the Court turns to the canons of statutory construction. *See Daniel*, 428 F.3d at 423. One "cardinal principle of statutory construction" is that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167,

---

[5] The dictionary alternatively defines "entry" as "a place of entrance," such as a "vestibule"; "the act of making or entering a record"; or "a person, thing, or group entered into something (such as a contest of market)." *See Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry. But none of those definitions would make sense here.

174 (2001)); *see also United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute." (citation and internal quotation marks omitted)).  As numerous courts have observed, if all "applicant[s] for admission" also are "seeking admission," then the words "seeking admission" would be surplusage.  *See, e.g.*, *Hyppolite*, 2025 WL 2829511, at *9; *Guerrero Orellana*, 2025 WL 2809996, at *7; *Jimenez*, 2025 WL 2639390, at *8; *Romero*, 2025 WL 2403827, at *9; *Martinez*, 2025 WL 2084238, at *4.  After all, Congress simply could have said "if the examining immigration officer determines that *an applicant for admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  Instead, however, Congress said that an alien who is an applicant for admission *and who is seeking admission* shall be detained if the examining immigration officer determines that he or she is not clearly entitled to be admitted.  8 U.S.C. § 1225(b)(2)(A).

So "seeking admission" cannot be synonymous with "applicant for admission."  It must refer to seeking physical entry at the border,[6] not the legal right to enter.[7]

---

[6] This includes noncitizens who have been "paroled" into the county, as they "are 'treated' for due process purposes" and for statutory purposes "'as if stopped at the border.'"  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *Henderson v. I.N.S.,* 157 F.3d 106, 111 n.5 (2d Cir. 1998) (describing parole as "a legal fiction").  It also includes noncitizens "who [are] detained shortly after unlawful entry" because they "cannot be said to have 'effected an entry.'"  *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693).  For example, in *Thuraissigiam*, the Supreme Court found that a noncitizen who "succeeded in making it 25 yards into U.S. territory before he was caught" had not effected an entry and therefore was properly detained under section 1225(b).  *See id.* at 139.

[7] The BIA, by contrast, found that the text of section 1225(b)(2) *unambiguously* covers any noncitizen who has not been legally admitted to the country.  *See Hurtado*, 29 I. & N. Dec. at 221 (concluding that noncitizen's "argument [wa]s not supported by the plain language of the INA").  In the BIA's view, the idea that someone could be

The other subparagraphs in section 1225(b)(2) support this interpretation. Subparagraph (B) provides that section 1225(b)(2)(A) "shall not apply to an alien . . . who is a crewman" or "who is a stowaway."  8 U.S.C. § 1225(b)(2)(B).   And subparagraph (C) states that "[i]n the case of an alien described in subparagraph (A) who is *arriving on land* (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title."  *Id.* § 1225(b)(2)(C) (emphasis added).   The fact that these carve-outs involve various means of arriving in the United States suggests "that the category of applicants for admission covered by [section] 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering—not those in [Alvarez Ortiz's] circumstances."  *See Hyppolite*, 2025 WL 2829511, at *9.

The regulations also support this Court's reading of section 1225(b)(2).  Section 235.1(f)—titled "Alien applicants for admission"—provides that

> [e]ach alien *seeking admission at a United States port-of-entry* must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations, and is entitled, under all of the applicable provisions of the immigration laws and this chapter, to enter the United States.

---

seeking to stay in the country but not "seeking admission . . . creates a legal conundrum."  *Id.*  "If he is not admitted to the United States (as he admits) but he is not 'seeking admission' (as he contends)," the BIA asked, "then what is his legal status?"  *Id.*  Of course, the answer may be that he has no legal status—that he is an illegal noncitizen—but that does not make him any less present in the country.  Moreover, the BIA did not address the argument outlined here regarding surplusage, nor did either of the two district courts to follow *Hurtado.  See Vargas Lopez*, 2025 WL 2780351, at *7-9; *Chavez*, 2025 WL 2730228, at *4-5.

8 C.F.R. § 235.1(f)(1) (emphasis added).  This suggests that those "seeking admission" are at or near the border.

Additionally, as numerous courts have observed, the respondents' interpretation of section 1225(b)(2) would render the 2025 Laken Riley Act—which amended 8 U.S.C. § 1226(c)—purposeless.  *See, e.g.*, *Hyppolite*, 2025 WL 2829511, at *10; *Romero*, 2025 WL 2403827, at *11; *Gomes v. Hyde*, 2025 WL 1869299, at *7-8 (D. Mass. July 7, 2025).  As explained above, the Laken Riley Act added the following category to those who must be detained under section 1226(c):

> [A]ny alien who . . . (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. 1226(c)(1)(E); *see also Romero*, 2025 WL 2403827, at *11.  But as the respondents conceded at oral argument, anyone who "is inadmissible under" section 1182(a)(6)(A), (6)(C), or (7) is by definition an "applicant for admission" and therefore would be covered under the respondents' reading of section 1225(b)(2).  In other words, by the respondents' own admission, the text added by the Laken Riley Act is completely co-extensive with their interpretation of section 1225(b)(2), and Laken Riley therefore was a meaningless addition to our nation's laws.

The respondents argue that this was a mere "belt and suspenders" approach to make extra sure that noncitizens in this category were not released.  But as much as this Court understands and values reducing risk through redundancy, "the canon against surplusage"—which "is strongest when an interpretation would render superfluous another part of the same statutory scheme"—does not.  *See Marx v. Gen.*

16

*Revenue Corp.*, 568 U.S. 371, 386 (2013); *see also Bilski v. Kappos*, 561 U.S. 593, 608 (2010) ("[The canon against surplusage], of course, applies to interpreting any two provisions in the U.S.[ ]Code, even when Congress enacted the provisions at different times."); *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

And here, the respondents' interpretation would not only "render superfluous another part of the same statutory scheme," it would render superfluous an act amending that statutory scheme. In other words, the respondents implicitly suggest that Congress passed Laken Riley for no good reason at all. So the Laken Riley Act also leads this Court to conclude that "seeking admission" means seeking entry at or near the border, not seeking the legal right to enter.

Zooming out, looking at the statute as a whole, and considering its place in the statutory scheme of immigration law bolsters this Court's conclusion that only those "seeking admission" at or near the border are subject to detention under section 1225(b)(2). *See King v. Burwell*, 576 U.S. 473, 486 (2015) (explaining that courts "must read the words in their context and with a view to their place in the overall statutory scheme" (citation and internal quotation marks omitted)); *see also Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.'" (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995))). The relevant subchapter of the INA—titled "Inspection, Apprehension, Examination, Exclusion, and Removal"—includes the following sections:

§ 1221. Lists of alien and citizen passengers arriving and departing

§ 1222. Detention of aliens for physical and mental examination

§ 1223. Entry through or from foreign territory and adjacent islands

§ 1224. Designation of ports of entry for aliens arriving by aircraft

§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing

§ 1225a. Preinspection at foreign airports

§ 1226. Apprehension and detention of aliens

§ 1226a. Mandatory detention of suspected terrorists; habeas corpus; judicial review

§ 1227. Deportable aliens

§ 1228. Expedited removal of aliens convicted of committing aggravated felonies

§ 1229. Initiation of removal proceedings

§ 1229a. Removal proceedings

§ 1229b. Cancellation of removal; adjustment of status

§ 1229c. Voluntary departure

§ 1230. Records of admission

§ 1231. Detention and removal of aliens ordered removed

§ 1232. Enhancing efforts to combat the trafficking of children

Notably, sections 1221 through 1225a all deal with noncitizens arriving in the United States—or in the case of section 1225a—seeking to arrive. It would make little sense to sandwich section 1225 between sections dealing exclusively with arrival or attempted arrival of noncitizens if it were intended to broadly apply to all noncitizens present in the United States who have not been admitted.

18

The title of section 1225 also bears noting: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing."  8 U.S.C. § 1225 (emphasis added); *see also Barrera*, 2025 WL 2690565, at *4 ("The added word of 'arriving' indicates that the statute governs 'arriving' noncitizens, not those present already."); *Pizarro Reyes*, 2025 WL 2609425, at *5 ("The use of 'arriving' to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.  This reading is bolstered by the fact that [section] 1225 clearly establishes an inspection scheme for when to let noncitizens into the country."). Regulations define "arriving alien" as

> an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1.2.

This Court's reading of section 1225(b)(2) also is consistent with Supreme Court jurisprudence.  As explained above, in *Jennings*, the Court described section 1225(b) as "authoriz[ing] the [g]overnment to detain certain [noncitizens] *seeking admission into* the country" and section 1226(a) and (c) as "authoriz[ing] the [g]overnment to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings."  *See* 583 U.S. at 289 (emphasis added).  More fundamentally, "[t]he distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law."  *See Zadvydas*, 533 U.S. at 693.  And, as the Supreme Court has held, "once [a noncitizen] enters the country, the legal circumstance changes, . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Id.*

Finally, if all that were not enough, the Court's reading of the statutes has been DHS's and ICE's reading for many years. *See, e.g.*, *Guerrero Orellana*, 2025 WL 2809996, at \*8; *Hasan*, 2025 WL 2682255, at \*9; *Lopez Benitez v. Francis*, ⸺ F. Supp. 3d ⸺, 2025 WL 2371588, at \* (S.D.N.Y. Aug. 13, 2025). "Congress enacted the current statutory scheme in the Illegal Immigration Reform and Immigrant Responsibility Act ('IIRIRA') in 1996." *Guerrero Orellana*, 2025 WL 2809996, at \*8 (citing Pub. L. No. 104-208, §§ 302-03, 110 Stat. 3009, 3009-579 to -587 (1996)). And "[w]hen the Department of Justice issued implementing regulations months after passage of IIRIRA, the agency explained that '[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.'" *Id.* (quoting Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)). Under the administrations of five presidents—including this one in 2016-2020—section 1225 applied to noncitizens at or near the border or those who were still seeking admission under the legal fiction of parole; section 1226, on the other hand, applied to those noncitizens found in the United States without legal status and therefore subject to removal. *See id.* ("Until changing their positions this year, the relevant agencies consistently applied [section]1226, not [section] 1225(b)(2)(A), to noncitizens who entered without inspection and were later apprehended within the country."). And nothing has changed—factually or legally—to warrant that ipse dixit change in interpretation, which "would require the detention of millions of immigrants currently residing in the United States." *See Martinez*, 2025 WL 2084238, at \*5.

For all those reasons, this Court finds that section 1225(b)(2) applies only to noncitizens actively "seeking admission" at or near the border or who have been paroled.[8]  This Court therefore denies the respondents' motion to dismiss, and it also finds that Alvarez Ortiz is likely to succeed on the merits of his claim that the authority for his detention stems from section 1226(a) and not section 1225(b).

## IV.    IRREPARABLE HARM AND BALANCE OF THE EQUITIES

Having found that Alvarez Ortiz is likely to succeed on the merits of his claim, this Court easily finds that the other two prongs of the TRO test are met.  First, there is no question that unlawful detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied.  Likewise, there is little question that the balance of the equities and the public interest favors granting a TRO to ensure that Alvarez Ortiz gets the process he is due under section 1226(a).  After all, if he is not a danger or a flight risk, then it is in no one's interest to detain him.  And the Court finds that any added burden on the government is far outweighed by Alvarez Ortiz's—and society's—interest in his release if his detention is not warranted.

---

[8] Because the Court finds that Alvarez Ortiz—and those like him—who are already present in the country are not "seeking admission," it need not decide the scope of "inspection" under section 1225 or who qualifies as an "examining immigration officer."  *See Jimenez*, 2025 WL 2639390, at *7 (noting that "for [section] 1225(b)(2)'s mandatory detention regime to apply, several requirements must be met: (1) an 'examining immigration officer' (2) must conclude during an 'inspection' (3) of an 'applicant for admission' (4) who is 'seeking admission' (5) that the person 'is not clearly and beyond a doubt entitled to be admitted'" (quoting 8 U.S.C. § 1225(b)(2)(A))).

## V.    REMEDY

Alvarez Ortiz seeks a TRO requiring his "release or [that] a bond hearing on the merits be held by [the r]espondents within [seven] days."  Docket Item 8 at 2.  The Court finds that a bond hearing is the appropriate remedy.  *See, e.g., Romero*, 2025 WL 2403827, at *13 (noting that "the appropriate remedy will usually be a bond hearing to consider the merits of release under section 1226"); *Gomes*, 2025 WL 1869299, at *9 (finding that "the appropriate remedy is to order the Immigration Court to conduct a new hearing at which it considers Gomes'[s] eligibility for bond under [s]ection 1226(a)).  But that is only part of the answer.  The Court also must address what procedures are required at that hearing.

In *Jennings*, "the Supreme Court held that [section] 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, [but] it left open the question of whether the Due Process Clause does."[9] *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-35 (S.D.N.Y. 2018); *see Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019) (noting that section "1226(a) is silent on the issues of which party bears the burden of proof at a custody redetermination hearing and the quantum of evidence necessary to satisfy that burden").  Since *Jennings*, however, "a number of district courts have taken up the question left open by the Supreme Court, and there has emerged a consensus view that where, as here, the

---

[9] "The Fifth Amendment's Due Process Clause forbids the [g]overnment to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.'" *Zadvydas*, 533 U.S. at 690.  It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."  *Id.* at 693; *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("No one disputes that the Fifth Amendment entitles noncitizens to due process of law." (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." *Darko*, 342 F. Supp. 3d at 435 (collecting cases).

This includes several courts in this District. *See Adejola*, 408 F. Supp. 3d at 287 (Wolford, J.) ("This Court . . . concludes that the Fifth Amendment's Due Process Clause requires the [g]overnment to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under [section] 1226(a)." (citation and internal quotation marks omitted)); *Aparicio-Villatoro v. Barr*, 2019 WL 3859013, at *5-7 (W.D.N.Y. Aug. 16, 2019) (Telesca, J.) ("The Court agrees with the district court cases holding that allocating the burden to a noncriminal alien to prove he should be released on bond under [section] 1226(a) violates due process because it asks '[t]he individual . . . to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the [government].'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))).  And more recently, in three cases like this one involving the misclassification of detention authority, Judge Vacca ordered the respondents to "conduct a constitutionally adequate bond hearing . . . where the [g]overnment bears the burden of proving by clear and convincing evidence that [the p]etitioner[']s continued detention is justified based on his dangerousness to the community or risk of flight."  *See Rezende v. Bondi*, Case No. 6:25-cv-6538, Docket Item 19 (W.D.N.Y. Oct. 29, 2025); *Barbosa Da Cunha v. Moniz*, Case No. 6:25-cv-6532, Docket Item 25 (W.D.N.Y. Oct. 20, 2025); *Andrade Lozano v. Hyde*, Case No. 6:25-cv-6528, Docket Item 20 (W.D.N.Y. Oct. 17, 2025).

The First Circuit likewise has concluded that at an initial bond hearing under section 1226(a), the burden must be on the government. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021). But the Third, Fourth, and Ninth circuits have held that due process does not require shifting the burden from the noncitizen to the government in a section 1226(a) bond hearing. *See Borbot v. Warden, Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213 (9th Cir. 2022).

The Second Circuit has not squarely reached the issue of what process is due to a detained noncitizen before detention has been prolonged. *See Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.13 (2d Cir. 2020) ("This case does not require us to establish a bright-line rule for when due process entitles an individual detained under [section] 1226(a) to a new bond hearing with a shifted burden. On any calculus, Velasco Lopez's fifteen-month incarceration without a determination that his continued incarceration was justified violated due process."). The Second Circuit recognized, however, that "the [g]overnment's interest *may* have initially outweighed short-term deprivation of Velasco Lopez's liberty interests." *Id.* at 855 (emphasis added); *see also id.* at 83 (explaining that "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention" (quoting *Zadvydas*, 533 U.S. at 701)).

Thus, "*Velasco Lopez* suggests that there could be cases in which failing to shift the burden to the government at the outset would not violate due process, because the interests at that stage of the proceedings differ from the interests after prolonged detention." *Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364, 373 (W.D.N.Y. 2023).

24

But it also does not foreclose this Court's finding that such process is required.  *See, e.g.*, *id.* at 374 n.2 (Chief Judge Wolford's explaining that she "continues . . . to be of the view that the Due Process Clause requires that individuals detained under [section] 1226(a) be provided a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the individual is either a danger to the community or a flight risk, and where the immigration judge must consider non-bond alternatives to detention or, if setting a bond, ability to pay"); *B.S. v. Joyce*, 2023 WL 1962808, at *4 (S.D.N.Y. Feb. 13, 2023) ("Like other courts faced with due process challenges to initial bond hearings since *Velasco Lopez*, this Court will continue to require the government to bear the burden of proof at all section 1226(a) bond hearings."); *Jimenez v. Decker*, 2021 WL 826752, at *8 (S.D.N.Y. Mar. 3, 2021) (finding that "[r]espondents' interpretation of the Second Circuit's decision as holding that allocating the burden on the detainee at an initial bond hearing 'does not violate due process absent prolonged detention' proves too much").

After careful consideration and for the reasons that follow, this Court finds that constitutional due process requires the government to bear the burden of proving by clear and convincing evidence that the individual is either a danger to the community or a flight risk even at an initial bond hearing under section 1226(a).  In doing so, this Court joins the "[n]umerous district courts in the Second Circuit" that have reached that conclusion.[10]  *See Banegas v. Decker*, 2021 WL 1852000, at *2 (S.D.N.Y. May 7, 2021)

---

[10] This Court previously has suggested that absent prolonged detention, no burden shifting is required to satisfy due process.  *See, e.g., Rasel v. Barr*, 2019 WL 4257408, at *3, *6 (W.D.N.Y. Sept. 9, 2019); *Fallatah v. Barr*, 2019 WL 2569592, at *3-5 (W.D.N.Y. June 21, 2019).  But after careful review of the caselaw—including the First Circuit's subsequent decision in *Hernandez-Lara*, 10 F.4th 19—and reconsideration of

(collecting cases). Moreover, consistent with this Court's rulings in prolonged detention cases, *see, e.g.*, *Pucha Quituizaca v. Barr*, 2020 WL 3166732, at *8 (W.D.N.Y. June 15, 2020); *Hemans v. Searls*, 2019 WL 955353, at *9 (W.D.N.Y. Feb. 27, 2019), the Court finds that the immigration judge must consider non-bond alternatives to detention or, if setting a bond, the noncitizen's ability to pay.

### A. *Mathews v. Eldridge* Analysis

As with any procedural due process question, the Court is guided by the balancing test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). As the Court in *Mathews* explained, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

### 1. The Private Interest Affected

Alvarez Ortiz's interest here "is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing

---

the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), this Court now revises its position.

*Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  And "[c]ase after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'"  *Velasco Lopez*, 978 F.3d at 851 (quoting *United States v. Salerno*, 48 U.S. 739, 755 (1987)).

Moreover, although "the liberty interest of a noncitizen detained under section 1226(a) may . . . be slightly less weighty than that of individuals facing indefinite and prolonged detention," it is "only slightly less."  *Hernandez-Lara*, 10 F.4th at 29 (noting that "[t]he exact length of detention under section 1226(a) is impossible to predict and can be quite lengthy").  As the Second Circuit noted in *Velasco Lopez*, "[d]etention under [section] 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded."  978 F.3d at 852.  "Absent release on bond, detention lasts through the initial removal determination proceedings (which themselves can take months or years) and all inter-agency and federal court appeals, even where an individual has prevailed and the [g]overnment appeals."  *Id.*

Finally, it is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is "not the result of a criminal adjudication." *See id.* at 851; *see also Hernandez-Lara*, 10 F.4th at 36 ("Unlike section 1226(c), section 1226(a) applies to a wide swath of noncitizens, many of whom . . . have no criminal record at all.").  This, too, heightens Alvarez Ortiz's interest in his liberty.

For all those reasons, the Court finds that the first *Mathews* factor weighs heavily in Alvarez Ortiz's favor.

### 2.    The Risk of Erroneous Deprivation and the Value of Additional Procedural Safeguards

The Court also finds that the second factor—"the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335—weighs in favor of requiring a bond hearing with the burden of proof on the government.  As the First Circuit has observed, "noncitizens have no right to be provided with counsel in immigration proceedings and very often cannot obtain counsel on their own, particularly if they are detained."  *Hernandez-Lara*, 10 F.4th at 30; *see also Black v. Decker*, 103 F.4th 133, 155 (2d Cir. 2024) (finding "persuasive the First Circuit's reasoning" in *Hernandez-Lara* when considering procedures required after prolonged detention under 8 U.S.C. § 1226(c)).

Additionally, "detained individuals will likely experience difficulty in gathering evidence on their own behalf."  *Hernandez-Lara*, 10 F.4th at 30.  And this is particularly so given that "noncitizens subject to immigration detention often lack full proficiency in English."  *See id.*  Moreover, "immigration law and procedures and the particular preferences of individual [immigration judges] are likely much better known to government representatives than to detainees."  *See id.* at 31.  And finally, "proving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern."  *See id.* (citing *Elkins v. United States*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative.")).

As to the burden of proof, "[t]he Supreme Court has consistently held the [g]overnment to a standard of proof higher than a preponderance of the evidence where liberty is at stake[] and has reaffirmed the clear and convincing standard for various

types of civil detention." *Velasco Lopez*, 978 F.3d at 856 (collecting cases). "The preponderance standard, the Supreme Court has noted, 'creates the risk of increasing the number of individuals erroneously committed' and 'it is at least unclear to what extent, if any, the state's interests are furthered by using [it].'" *Id.* (quoting *Addington*, 441 U.S. at 426). Thus, in the context of prolonged detention, the Second Circuit has found it "improper to allocate the risk of error evenly between the individual and the [g]overnment when the potential injury is as significant as the individual's liberty." *Id.* And this Court now sees no reason to impose a different standard at an initial section 1226(a) bond hearing.

What is more, these concerns are all the more heightened in the current moment where the government has been, as this Court recently observed, "chang[ing] the rules by fiat." *See Mata Velasquez v. Kurzdorfer*, —— F. Supp. 3d ——, 2025 WL 1953796, at *18 (W.D.N.Y. July 16, 2025). Indeed, and as noted above, in this case the government has detained Alvarez Ortiz under an interpretation of section 1225(b)(2) that runs counter to precedent and decades of past practice. And that highlights the importance of due process protections—and in particular, saddling the government with the burden of proof.

Finally, in the context of prolonged detention, the Second Circuit has held that immigration judges conducting bond hearings must "consider [the noncitizen's] ability to pay and alternative means of assuring his appearance." *Black*, 103 F.4th at 159. "Requiring that [immigration judges consider] alternatives to detention and the noncitizen's ability to pay does nothing to constrain [the judges'] discretion," the Second Circuit explained," because an immigration judge "is free to give as much or as little

weight to these factors as appropriate, as long as *some* weight is given, and as long as the decision is reasonable." *Id.* (citation and internal quotation marks omitted). This Court sees no reason why that same analysis should not apply in a bond hearing that could prevent prolonged detention. *See Alfaro v. Barr*, 426 F. Supp. 3d 6, 12 (W.D.N.Y. 2019) (Wolford, J.) (finding "that both due process and BIA precedent require the [immigration judge] to consider ability to pay and alternative conditions of release in setting bond" under section 1226(a)).

### 3.   The Government's Interest

Finally, the Court considers "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The government's "interests in detaining noncitizens under [section] 1226(a) [are] (1) ensuring that noncitizens do not abscond and (2) ensuring they do not commit crimes." *Velasco Lopez*, 978 F.3d at 854. So the government certainly has a strong interest in being able to detain Alvarez Ortiz if he is a danger or a flight risk.

But the question here is whether the government also has an interest that might counsel against its bearing the burden of proof by clear and convincing evidence. And this Court finds that if there is such an interest, any additional burden borne by the government would be minimal.

First, "the government already has a strong incentive to obtain criminal records even under existing bond procedures," and the Court "doubt[s] very much that shifting the burden will cause the government to expend more than minimal additional resources obtaining such records." *See Hernandez-Lara*, 10 F.4th at 33. In other

words, the government's work will be the same regardless of who bears the burden of proof.

Moreover, the Court finds that the Second Circuit's analysis in *Velasco Lopez*—although it dealt with this question in the context of prolonged detention—applies equally here. *See* 978 F.3d at 854-55. More specifically, the Second Circuit noted that the government had "not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Id.* at 854. "ICE and DHS can access the records of other federal agencies and local law enforcement and routinely do so for purposes of the merits proceedings." *Id.* Moreover, the panel explained, "shifting the burden of proof to the [g]overnment to justify continued detention promotes the [g]overnment's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* Thus, the panel concluded that "requiring [the government] to justify [the petitioner]'s detention by clear and convincing evidence" would not "substantially undermine[ the government's] legitimate interests or entail[] an undue administrative burden." *Id.* at 854-55.

For all those reasons, this Court finds that any interest the government has in the burden being on the petitioner in a section 1226(a) bond hearing is limited and does not outweigh the other factors described above.

## CONCLUSION

In sum, the Court finds that Alvarez Ortiz is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but instead is detained under section 1226(a). As a result, the Court DENIES the respondents' motion to dismiss, Docket Item 12, and finds that Alvarez Ortiz is likely to succeed on the merits of his claim. The Court further finds that

Alvarez Ortiz has established irreparable harm and that the balance of the equities weighs in his favor.  Thus, the Court GRANTS his motion for a TRO, Docket Item 8.

More specifically, the Court ORDERS the respondents to provide Alvarez Ortiz with an individualized bond hearing before an immigration judge **within seven calendar days of the date of this decision and order** at which the government shall bear the burden to demonstrate, by clear and convincing evidence, that he is a danger to the community or a flight risk.  At that bond hearing, the immigration judge must consider non-bond alternatives to detention or, if setting a bond, Alvarez Ortiz's ability to pay.  If the respondents fail to provide such a hearing within seven calendar days, they shall immediately release Alvarez Ortiz.

On or before **November 12, 2025**, the respondents shall (1) file a status report confirming that Alvarez Ortiz has either been granted a bond hearing in compliance with this decision and order or released from custody, (2) show cause why the TRO should not be converted into a preliminary injunction and/or why the petition should not be granted for the reasons explained in this decision and order.

SO ORDERED.

Dated:   November 4, 2025
Buffalo, New York

*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE